MICHAEL R. PONTONI
64 N. Pecos Road, #100
Henderson, Nevada 89074
(702) 990-6444 Telephone
(702) 990 6445 Facsimile
pontonioffice@lvcoxmail.com
PLAINTIFF IN PROPER PERSON

# UNITED STATED DISTRICT COURT

## DISTRICT OF NEVADA, SOUTHERN DIVISION

\* \* \* \*

| | |
|---|---|
| MICHAEL R. PONTONI, an individual; | **2:18-cv-00461-JAD-PAL** |
| plaintiff, | |
| vs. | |
| | **PLAINTIFF'S COMPLAINT** |
| JOSEPH M. DESIMONE, JR., an individual; WILLIAM C. "BILL" WORTMAN, an individual; SERIES II of RRP PROPERTIES, LLC, a Nevada series limited liability company; KITTANSETT INVESTMENT HOLDINGS LIMITED PARTNERSHIP, a Nevada limited partnership; FIRST FEDERAL REALTY DESIMONE, LLC, a Nevada limited liability company, | |
| defendants. | |

COMES NOW, plaintiff and files his complaint and pleads all claims herein cumulatively and in the alternative, and demands a jury decide all questions of fact herein.

- 1 -

## STATEMENT OF JURISDICTION

1. This court has personal jurisdiction over each defendant because all events complained of herein took place within the County of Clark, State of Nevada, and all parties reside in and/or do business in Clark County, Nevada.

2. This court has original subject matter jurisdiction over this dispute based upon Article III of the Constitution stating this court's judicial power extends to cases and controversies in law and equity arising under the laws of the United States. Plaintiff pleads such matters herein, to wit:

   a. Plaintiff asserts certain defendants are liable to him under federal securities law 17 CFR 240.10b-5; and

   b. Plaintiff is a copyright owner in certain works and he is claiming his right to recover his copyrighted works from certain defendants pursuant to 17 U.S.C. sec. 102 *et. seq.*; plaintiff also claims certain defendants have infringed on his copyright and owe him damages and related relief.

3. All other of plaintiff's claims arise under the common law and/or Acts of the State of Nevada but are nonetheless closely related to plaintiff's claims herein under federal law that that they form part of the same case or controversy under Article III of the United States Constitution and are therefore properly pled here pursuant to supplemental jurisdiction afforded the court in 28 USC sec. 1367.

\ \ \

## FIRST CAUSE OF ACTION – CIVIL LIABILITY UNDER 10b-5 and 10b5-1.
(DeSimone, Kittansett, Series II)

4. Plaintiff incorporates by this reference paragraphs 1 – 3 hereinabove as though full set forth here.

5. Under 17 CFR 240.10b-5, it is unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails . . . to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or to engage in a course of business which operates or would operate as a fraud or deceit upon any person. Under 17 CFR 240.10b5-1, it is unlawful for a person to engage in insider trading.

6. In February 2016, defendant Series II of RRP Properties, LLC, a Nevada series limited liability company ("Series II") published a private placement memorandum offering for sale $2,500,000 Series II member's interests (hereafter the "Prospectus"). The Prospectus states the cost of constructing the travel center is expected to be $5,000,000, to be paid one half by investors and one half by bank financing.

7. The Prospectus represents Series II will acquire a 99-year lease of a prime +/- ten-acre site for the travel center, for just $25,000 ("site"). DeSimone advised potential investors that the site was visible from the new I-11 freeway, had a dedicated exit, and was adjacent to the Railroad Pass hotel and casino. The

Prospectus twice represents how, if the travel center were sold, the profits, i.e., the sale price in excess of the cost of construction, would be divided amongst investors in Series II. These representations communicated to potential investors like plaintiff was that the travel center will be, at time of completion, much more valuable than the cost to construct it.

8. On January 10, 2017, Series II accepted plaintiff's subscription to the offering for $73,158.40 to close out the last of the $2,500,000 offering (hereafter "plaintiff" or "plaintiff"). Thereafter, if not before, DeSimone as manager of Series II, owed plaintiff a fiduciary duty as a member/investor.

9. On February 9, 2017, plaintiff delivered good funds of $73,158.40 to DeSimone as Series II's manager. On or about February 10, 2017, the bank's construction loan closed.

10. On March 10, 2017, DeSimone offered to sell plaintiff +/- $190,442 of Series II member's interests originally purchased by DeSimone's holding company, Kittansett Investment Holdings Limited Partnership, LP ("Kittansett"). The price offered was the original price Kittansett subscribed to pay in February 2016. Plaintiff agreed.

11. Throughout the offering period and when plaintiff bought his member's interests, DeSimone, Series II, Kittansett and plaintiff each used telephone land lines, cellular telephones, cellular texts, fax machines, emails, wire transfers, the

mails, checks drawn on or made by FDIC insured banks (both registered and not registered in Nevada), to offer and sell the securities, to transfer monies invested in the securities, to develop the venture and loans underlying the offering.

12. Unbeknownst to plaintiff, before the offers and sales were made to him, but known to DeSimone, Series II, and Kittansett:

a. the lender's appraiser had appraised the Travel Center improvements for materially less than the cost to construct them, and thus each knew, contrary to the prospectus' representations, that the investment would be worth less than its cost upon completion, and thus the investment would be a money-losing proposition at time of purchase.

b. Due to this lower-than-expected-appraisal, and DeSimone being out of money, DeSimone enticed defendant William C. "Bill" Wortman ("Wortman") to purchase new member's interests in the Travel Center by increasing Wortman's return on investment to approximately 18%, as compared to other investors' 9% return. On information and belief, the following.[1] At some later time, Wortman and

---

[1] On March 8, 2018, Plaintiff delivered a letter to two attorneys representing Series II manager, defendant Joseph M. DeSimone, Jr., requesting DeSimone and Series II provide documentation confirming or contradicting the averments made on information and belief herein. Series II and its manager DeSimone have a statutory duty to provide the records requested per NRS 86.241(2)("member of a limited-liability company is entitled to obtain from the company . . . records required to be maintained"). On March 12, 2018, Series II's lawyer acknowledged receipt of the letters but rejected all plaintiff's requests for records based upon a phony excuse. Plaintiff rebutted the excuse in another letter and document sent to Series II's lawyer on March 12, 2018. That letter was ignored. Plaintiff therefore files this lawsuit and avers on information and belief.

DeSimone agreed to conceal the +/- 18% return from other investors, plaintiff, Nevada gaming regulators, and federal and state regulators, by issuing Wortman securities with the standard 9% return, and a separate phony 'consulting agreement' whereby the additional return on investment would be fraudulently disguised and paid ("Wortman kickback"). This extra benefit to Wortman destroyed the Series II offering's exemption from State and federal registration and broker/dealer representation. *See* NRS 90.570(11)(c), and federal securities law, rendering plaintiff's and all Series II's member's interest inviolate and a nullity as a matter of law.[2] This kickback also resulted in Series II committing bank fraud (regardless of whether the Series II's lender's employee(s) were complicit in Wortman kickback scheme).

---

[2] NRS 90.530 Exempt transactions. The following transactions are exempt from NRS 90.460 and 90.560:
 . . .
  11.  Except as otherwise provided in this subsection, a transaction pursuant to an offer to sell securities of an issuer if:
   (a) The transaction is part of an issue in which there are not more than 25 purchasers in this State, other than those designated in subsection 10, during any 12 consecutive months;
   (b) No general solicitation or general advertising is used in connection with the offer to sell or sale of the securities;
   **(c)  No commission *or other similar compensation is paid or given*, directly *or indirectly*, to a person,** other than a broker-dealer licensed or not required to be licensed under this chapter, for soliciting a prospective purchaser in this State; and
   (d) One of the following conditions is satisfied:
    (1) The seller reasonably believes that all the purchasers in this State, other than those designated in subsection 10, are purchasing for investment; or
    (2) Immediately before and immediately after the transaction, the issuer reasonably believes that the securities of the issuer are held by 50 or fewer beneficial owners, other than those designated in subsection 10, and the transaction is part of an aggregate offering that does not exceed $500,000 during any 12 consecutive months.

c. Prior to the plaintiff's Purchase Date, and unbeknownst to plaintiff, defendants knew the $5,000,000 cost to build the Travel Center stated in the prospectus was materially if not wildly understated by millions of dollars. On information and belief, DeSimone and other defendants hid costs they knew would be incurred from investors to get the bank loan closed.

d. The Travel Center investment's success was and is inexorably intertwined Railroad Pass Hotel & Casino solvency. For example, the Travel Stop investment was liable for the casino/hotel mortgage. Prior to the Purchase Date, but unbeknownst to plaintiff, defendants knew the casino/hotel was losing money much of the time and would likely continue to do so for the foreseeable future (cumulatively 12(a) – (d) the "Undisclosed Material Facts").

13. DeSimone, Kittansett, and Series II owed a duty to plaintiff to advise him of the Undisclosed Material Facts, when offering and before selling the Series II interests to plaintiff, because each one rendered the material representations in the Prospectus misleading. Instead, each intentionally defrauded plaintiff into purchasing the member's interests by knowingly omitting and concealing the Undisclosed Material Facts from plaintiff. *Accord* 10b-5(b).

14. Plaintiff reasonably relied upon the Prospectus and his knowledge, also common to the earlier investors, when he bought his member's interests. But for the omission and concealment of the Undisclosed Material Facts plaintiff would not have purchased the member's interests.

15.     The failure of these certain defendants to timely notify plaintiff of the Undisclosed Material Facts renders them subject to civil liability to plaintiff under 17 CFR 240.10b-5, and for insider trading pursuant to 17 CFR 240.10b5-1.

## SECOND CAUSE OF ACTION – CONCERT OF ACTION.
(Wortman and DeSimone)

16.     Plaintiff incorporates by this reference paragraphs 1 – 15 hereinabove as though full set forth here.

17.     DeSimone and Wortman acted in concert with one another when they engaged in the extraordinarily dangerous activities set forth above and incorporated herein by reference, resulting in grievance injury to plaintiff, Series II, the commission of felonies under state and federal law. Wortman may not have intended to do such harm, but he did when acting in concert with DeSimone to conceive of, perfect, and profit from the Wortman kickback and to conceal it from plaintiff, Nevada securities regulators, lender, gaming regulators, and its other investors.

18.     Wortman and DeSimone are therefore jointly and severally liable to plaintiff for the relief plaintiff is awarded under cause of action number two herein, plus attorney fees and cost, pre-judgment interest and post judgment interest, and punitive damages per Nevada law.

\     \     \

## THIRD CAUSE OF ACTION – AIDING AND ABETTING.
(Wortman)

19. Plaintiff incorporates by this reference paragraphs 16 – 30 hereinabove as though full set forth here.

20. Wortman substantially assisted or encouraged DeSimone to engage in the dangerous activity detailed hereinabove, including the kickback scheme, its fraudulent concealment, the destruction of Series II's exemption from registering its securities, and causing Series II and DeSimone breach duties owed to plaintiff.

21. Wortman was aware of his role in promoting the kickback scheme – it could not have been performed without him, he directly benefitted from the outsize return he received on his investment, and he obviously knew how the outsize return would be disguised from Series II lenders, investors, and State and federal securities regulators, and Nevada gaming regulators.

22. Wortman knowingly and substantially assisted DeSimone and Series II in entering into the kickback scheme with him, by agreeing to and executing the two-documents intended to conceal the kickback scheme from others including plaintiff.

23. Wortman is therefore jointly and severally liable to plaintiff for the relief plaintiff is awarded under cause of action number two herein, plus attorney fees and cost, pre-judgment interest and post judgment interest, plus punitive damages per Nevada law.

# FOURTH CAUSE OF ACTION – COPYRIGHT INFRINGEMENT AND RELATED RELIEF.
(defendants FFRD and DeSimone)

24. Plaintiff is an attorney licensed to practice law in Nevada since 1991. worked as in-house counsel for defendants First Federal Realty DeSimone, LLC ("FFRD") and DeSimone, exclusively in Nevada, from October 23, 2015 to December 29, 2017, approximately 26 months (hereafter the "Term").

25. Plaintiff's compensation, duties, rights, and responsibilities during the Term was governed concurrently or consecutively by two written employment contracts and three contracts styled as independent contractor or retainer agreements (cumulatively the "Contracts"). None of the Contracts stated plaintiff would create "works for hire" or a "work for hire" for a defendant herein or anyone else.

26. During the Term, plaintiff created all his writings of every nature, kind and description (i) from 'scratch;' (ii) by making material modifications to writings he brought to FFRD from his own library of writings that plaintiff owned the copyright to; and/or (iii) by materially modifying forms saved on FFRD's server or provided by others during the Term, 99% of which were not created by FFRD or DeSimone. Plaintiff stored his works throughout the Term on FFRD's server computer.

27. Plaintiffs writings during the Term were typically sophisticated, lengthy, highly customized, and reflective of plaintiff's 25 plus years of experience in sophisticated business law matters, consisting of:

  a. contracts for employment, settlement, mergers, acquisitions, stock

purchases, purchase of non-restricted gaming properties, letters of intent, non-disclosure agreements, etc.;

b. letters with points and authorities or other legal ramifications;

c. litigation papers filed with courts such as pleadings, motions, points and authorities, discovery documents, dismissals, injunctions, personal discovery forms, etc.;

d. real estate documents such as deeds, liens, leases, subleases, sub-subleases, releases, assignments, conveyances, lis pendens releases, etc.

e. countless emails including references to points and authorities, legal opinions, date and time recordings, etc.;

f. dozens of legal opinions; and

g. other miscellaneous writings and creations (hereafter the "<u>works</u>").

28.   On December 29, 2017, FFRD terminated plaintiff, without prior forewarning, cause or privilege. Plaintiff had an employment contract promising him employment, use of the FFRD offices and its computer and server, and free 24/7 access to same through to June 30, 2018.

29.   Due to the unexpected termination, plaintiff does not have copies, possession or control of 98% of his works. FFRD and DeSimone are in possession of 100% of plaintiffs works. Neither defendant has agreed to give plaintiff copies of his works. On the contrary, both posit works belongs to FFRD and/or DeSimone, or affiliates DeSimone controls, and that plaintiff cannot have or use his works.

30. Plaintiff owns the copyright to his works and is entitled to the appurtenant rights and protections afforded in 17 U.S.C. secs. 102(a)(1) and 103, et. al., because they are his original, derivative and/or compiled literary works of authorship, fixed in a tangible medium of expression, from which they can be perceived, reproduced, and otherwise communicated, either directly or with the aid of a computer, machine or device.

31. Plaintiff asks the court for declaratory relief and to enter a judgment declaring plaintiff the exclusive owner of the copyright in his works.

32. Plaintiff is entitled to preliminary injunction and/or mandatory injunction compelling said defendants to deliver plaintiff good Word and pdf copies of all his works. Plaintiff is also entitled to a judgment of mandatory injunction compelling said defendants, their affiliates, attorneys, and anyone acting concert with them to destroy the works in their possession (of course, after furnishing plaintiff with copies).

33. Due to said defendant's infringement, plaintiff has been without the benefit, use or possession of his works and has incurred extra hours at his hourly rate of $385 an hour that, but for the infringement, he would not have. Said defendants are liable to plaintiff for these damages according to proof.

34. On information and belief, FFRD and/or Desimone or their affiliates have used and benefitted from the works, without paying plaintiff compensation, furnishing recognition of plaintiff's authorship of the work or derivative work,

without privilege or permission (hereafter the "infringement"). Plaintiff ask the court to enter a judgment for money damages for the infringement in an amount to be determined by the court but in excess of $15,000.

35. Plaintiff is entitled to a judgment for attorney's fees and costs and for said defendants to pay all costs of reproduction, of preliminary injunction and mandatory injunction compelling said defendants to deliver to plaintiff good Word and pdf copies of all the work.

**WHEREFORE**, plaintiff prays for a judgment on his first cause of action against DeSimone, Kittansett, and Series II, jointly and severally:

A. For restitution of plaintiff's purchase money in exchange for the member's interest; or in the alternative money damages, all as plaintiff may elect.

B. For attorney fees and costs incurred to prosecute this action

C. For prejudgment and post judgment interest on all money awards.

D. Such other and further relief as plaintiff may pray for and/or the court may award.

**WHEREFORE**, plaintiff prays for a judgment against the defendants DeSimone and Wortman, jointly and severally on the second cause of action:

E. For restitution of plaintiff's purchase money in exchange for the member's interest; or in the alternative money damages, all as plaintiff may elect.

F. For attorney fees and costs incurred to prosecute this action

G. For prejudgment and post judgment interest on all money awards.

H. For punitive damages under Nevada law.

I. Such other and further relief as plaintiff may pray for and/or the court may award.

**WHEREFORE**, plaintiff prays for a judgment against the defendant Wortman on the third cause of action:

J. For restitution of plaintiff's purchase money in exchange for the member's interest; or in the alternative money damages, all as plaintiff may elect.

K. For attorney fees and costs incurred to prosecute this action

L. For prejudgment and post judgment interest on all money awards.

M. For punitive damages under Nevada law.

N. Such other and further relief as plaintiff may pray for and/or the court may award.

\ \ \

\ \ \

***WHEREFORE***, plaintiff prays for a judgment on cause of action four against defendants FFRD and DeSimone:

O. For declaratory relief finding plaintiff is the exclusive owner of the copyright for his works.

P. For mandatory injunction compelling return of plaintiff's works in Word and pdf format as they now reside on FFRD's server.

Q. For money damages according to proof, including for incidental and consequential damages.

R. For attorney fees and costs incurred to prosecute this action

S. For such other and further relief as this court deems reasonable and necessary.

DATED this 14th day of March

*[signature]*

MICHAEL R. PONTONI,
PLAINTIFF IN PROPER PERSON